[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
This is an action for dissolution brought by the plaintiff wife against the defendant husband. The parties were married for over 30 years, the marriage having taken place on October 9th, 1965. The plaintiff is 54 years old and the defendant is 57 years old. Neither was married previously. There are four children issue of the marriage who are presently adults; to wit: Gary, Julie, Michael and Peter.
The defendant is a licensed electrician and owns a successful CT Page 4118 business of which he is a 100 percent shareholder.
Both parties were working at the time of the marriage. Mr. Scrivani's business was conducted from the home and the plaintiff helped doing bookkeeping and banking. She also cared for the house and the four children as they came along.
Later in the marriage, the plaintiff returned to school and got her high school diploma. In the last few years of the marriage, she was able to obtain a license to sell real estate, both in Connecticut and in Florida. However, her real estate experience was not very successful in that she earned less than $10,000 during the two year period that she was engaged in sales in Connecticut and less than a $1,000 in Florida. She stopped selling real estate in Florida at the time of the trial because it was too difficult to keep up the business while she traveled back and forth several times a year to see her family.
The defendant's business became very successful over the years, and the parties moved from a multiple family house on Kossuth Street in Bridgeport to a single family house in Trumbull and then to the present marital home in Easton. As a result of his business, the defendant was able to acquire several pieces of real estate, including the marital home which both parties value at a minimum of a million dollars.
The plaintiff came to realize that she was totally dependant on her husband for money and, therefore, for her activities. She testified that she always had to ask for funds additional to the $200 per week which she received for groceries for the six people in the family. While the defendant said he gave her whatever she asked for, the fact is she always had to ask and that began to be a issue which the plaintiff found to be humiliating. She, therefore, decided she wanted to get away for a while and see what she could do by getting a condo in Florida and spending some time there. After some discussion, the defendant did tell her to use the bank account as security for a loan in order to buy the condo.
At the present time the condo in Fort Lauderdale, Florida is in the plaintiff's name and she values it at $85,000 with a mortgage of $40 some thousand on it. She has been living there for three or four years off and on making frequent trips to Connecticut to see her mother and her children. The children are staying in the marital home with the father, one of whom, Julia, is attending college. CT Page 4119
While apparently there was no sexual intimacy for the last several years, the defendant testified he thought the marriage was a good one and that the plaintiff was a good wife and mother. He, apparently, was totally unaware of his wife's unhappiness.
One of the factors which contributed to plaintiff's unhappiness was the long hours which the defendant spent at work which, of course, contributed to the success of his business.
In any event, the court finds that this is a no fault divorce since it appears to arise from a combination of factors, the traditional role of the wife and mother which the plaintiff performed without complaint until she began to realize that she had in effect no life of her own. The defendant also had the traditional role of provider and head of the family. Both parties contributed equally to the marital estate, the defendant by his working outside the home in his business and the plaintiff by working with him initially and then taking care of the home and the four children.
Given the court's finding that this is a no fault divorce, the marital assets should be distributed as equally as possible. Complicating that distribution is the fact that there is a trust for the four children to which the plaintiff had agreed and signed. In addition, the defendant also established a partnership to which the plaintiff did not agree also in the names of the children, GJMP. He had transferred pieces of property in Easton to that partnership. He had also established two bank accounts, one in the name of GJMP and another in the name of Ball Wall Pond Farm. He used both of these accounts as if they were his own and in fact said that whatever he thought was a partnership account was a partnership account.
In addition to the real estate, the defendant also had a valuable collection of artifacts and antiques which he originally valued at $250,000, his insurance company valued it at $300,000 and the plaintiff valued it at $800,000. However, in the claims for relief the defendant's counsel has suggested that the value was $400,000 and offered to pay the plaintiff half of it as a distribution of marital assets. There was no expert appraisal of the collection, but the testimony did indicate that the defendant was constantly adding to the collection even when he was not paying his wife alimony which had been ordered previously to the extent that he is now in arrears in the amount of $17,303 as of CT Page 4120 the start of trial.
Further, his financial affidavit gives his weekly income as $1500 gross from his company and $325 from the property on Silver Hill Road which is on the marital estate. With deductions of $501, his net is given as $1324 a week but there is some question as to whether that is an accurate figure. In April of 1996 he filed a mortgage application indicating he was earning $20,000 per month from his employment plus additional income from rents. In addition, his affidavit does indicate that he has expenses of $2370 a week and his only liability appears to be to the IRS. Further, some of those expenses are for the children who are already adults, including the college tuition payment of $100 per week.
It is difficult to determine just what the defendant's income is for a number of reasons. The first being that he totally controls the company from which he gets his weekly paycheck; the second is that he is able to spend large sums of money on his collection of antiques and artifacts; the third is that he is apparently able to spend a $1,000 per week, more than his claimed earnings, without incurring additional debt; and the fourth is that he uses the accounts in the name of GJMP and also the Ball Pond Company, Inc. as if they were his.
Under these circumstances, the request of the plaintiff for a $1,000 a week alimony seems to the court eminently reasonable. It is also difficult to understand, given the defendant's income, why he could not keep up the alimony payments prior to the trial and that suggests the need for security for payments that the court will order as a part of this judgment
While the plaintiff has requested that she receive the property on Silver Hill Road consisting of the marital home and a rental cottage and including 38 acres of undeveloped land, she did testify that she really had no desire to have that house and instead wanted a home of her own. The defendant, on the other hand, had testified that he loved this house and wished to own it along with the rental cottage and ten acres which is required for Easton to satisfy their zoning laws. He was agreeable to conveying the remaining 28 acres to the plaintiff. It has been estimated that the cost of land in Easton was something between $20,000 and $30,000 an acre. Assuming $25,000 an acre, it would mean that the total value of the 28 acres would be $700,000, $1,800,000 less than the estimated value of the Silver Hill CT Page 4121 property as set forth in the defendant's affidavit.
In addition to the marital home, the defendant's affidavit also lists his interest in Allied Elevator Company at $250,000, his interest in the GMJP Real Estate Partnership at $186,000; his interest in Allied Associates at $200,000 for a total of $636,000.
On this basis, the plaintiff's claims for relief, which includes a lump sum payment of $50,000, payment of all of her attorney's fees, is not really an equal distribution of the marital assets. This is significant because the earning capacity of the plaintiff is so much less than that of the defendant's. She would certainly not be able to live in the kind of lifestyle she has enjoyed or anything approaching it without sufficient income producing capital.
Consequently, after considering all of the elements of § 46b-81 and § 46b-82 of the General Statutes and the testimony and evidence before the court as well as the parties' claims, the court makes the following findings and orders
1. The parties were married on October 9, 1965. The marriage has broken down irretrievably with no hope of reconciliation, and it is hereby dissolved.
2. There are four children issue of the marriage, all of whom are now adults.
3. The defendant shall pay the plaintiff alimony at the rate of $1,000 a week until her remarriage, cohabitation within the meaning of the statutes or the death of either party.
4. The defendant shall secure a life insurance policy in the amount of $500,000, naming the plaintiff as sole beneficiary during the period that he is responsible for the payment of the alimony and as security for that payment. He shall also provide the plaintiff with proof of said insurance within ninety days from the date of this judgment and annually thereafter. Should the defendant be unable to obtain said insurance, the parties shall return to court and the defendant shall present proof of his inability to obtain insurance in the amount ordered.
5. The plaintiff shall quitclaim to the defendant all her right, title and interest in the marital home and cottage and the CT Page 4122 ten acres on which they are located on Silver Hill Road, Easton, Connecticut.
6. The defendant shall quitclaim to the plaintiff all his right, title and interest in the remaining 28 acres of that Easton property, free and clear of any encumbrances which are to be assumed and paid by the defendant.
7. The defendant is found to owe $17,303 in past due alimony as of the start of the trial, and he is ordered to pay the same within ninety (90) days following the date of this judgment as well as any other amounts that have become due in the interim.
8. The defendant shall provide medical, hospital, dental and psychiatric insurance for the plaintiff for three years following the issuance of the filing of this judgment at his expense since he has failed to provide it as ordered by the court pendente lite.
9. The defendant shall pay to the plaintiff as a partial distribution of marital assets the sum of $300,000 representing her share of his collectibles and the Rolls Royce and of the furnishings in the marital home. This amount shall be paid in full to the plaintiff within ninety (90) days from the date of the judgment herein, and he shall then retain ownership of the collectibles, the Rolls Royce and the home furnishings free and clear of any demand by the plaintiff.
10. The plaintiff shall convey to the defendant by quitclaim deed all her right, title and interest in the property at 38 Sharon Avenue, Naugatuck, Connecticut, and the defendant shall be responsible for any encumbrances thereon and shall hold the plaintiff harmless from any such encumbrances.
11. The defendant shall retain his interest in all of the other property listed in his financial affidavit, and he shall be responsible for any encumbrances thereon and shall hold the plaintiff harmless as to any such encumbrances.
12. The plaintiff shall retain her condominium at 3909 North Ocean Boulevard, Fort Lauderdale, Florida and its furnishings, free and clear of any claims by the defendant. CT Page 4123
13. Defendant shall retain his partnership interest in Allied Associates and Connecticut Avenue Associates free and clear of any claim by the plaintiff.
14. The defendant shall pay bills of Attorney Robert Jacconnetta and Kenneth Pia as listed on the plaintiff's affidavit.
15. The defendant shall be responsible for the payment of any indebtedness to the Internal Revenue Service in his name or in the plaintiff's name and shall hold the plaintiff harmless with regard thereto.
16. The defendant shall also be responsible for any liens or encumbrances, including mortgages, attachments, judgment liens and tax liens, on any property listed in his name or liens and tax liens, on any property listed in his name or that of the plaintiff except for the mortgage on the plaintiff's condominium.
17. As security for the payment of all the other payments other than alimony that the defendant is ordered to make under this judgment, the defendant shall provide the plaintiff with a note and mortgage payable on demand in the amount of $500,000 on the Silver Hill property heretofore conveyed to him conditioned on the payment of the funds ordered herein within ninety (90) days from date.
18. A wage execution conditioned on the prompt payment of the alimony ordered shall issue
18. The defendant shall contribute $10,000 to the plaintiff for her attorney's fees.
MARGARET C. DRISCOLL JUDGE TRIAL REFEREE